IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICE B. DAVIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PNGI CHARLES TOWN GAMING, LLC | : | No. 07-2352 |

## MEMORANDUM AND ORDER

**Padova, J.**                                                                 **December 26, 2007**

Plaintiff, Alice B. Davis, a Pennsylvania resident, has brought this personal injury action against Defendant PNGI Charles Town Gaming, LLC d/b/a Charles Town Racing & Slots, alleging that she was injured on November 26, 2005, when she fell inside the casino operated by Defendant in Charles Town, West Virginia (the "Casino"). Defendant has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction or, in the alternative, for transfer of venue to the Northern District of West Virginia pursuant to 28 U.S.C. § 1406(a). For the reasons that follow, Defendant's Motion is granted and this action is transferred to the Northern District of West Virginia.

I.      BACKGROUND

The Complaint alleges that, on November 26, 2007, as a direct result of Defendant's negligence, Plaintiff fell on a carpeted area of the Casino. (Compl. ¶¶ 6, 9, 11.) The carpet where Plaintiff fell had an uneven, loose surface or raised protrusion and Defendant knew of, or should have known of, this dangerous and defective condition. (Id. ¶¶ 9-10.) As a result of her fall, Plaintiff suffered a left intertrochanteric hip fracture and other injuries to her nerves and nervous system. (Id. ¶ 13.) The Complaint further alleges that, as a proximate and direct result of her fall, Plaintiff suffered great physical pain and mental anguish and impairments which prevent her from all or

substantially all of her usual and customary daily activities.  (Id. ¶¶ 13-14.)

II.      LEGAL STANDARD

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's

allegations as true and construe disputed facts in favor of the plaintiff.'" Pinker v. Roche Holdings,

Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (quoting Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141,

142 n.1 (3d Cir. 1992)).  Nonetheless, a motion made pursuant to Rule 12(b)(2) "is inherently a

matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam

jurisdiction actually lies." Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d

Cir. 1984).  Accordingly, "[o]nce the [lack of personal jurisdiction] defense has been raised, then the

plaintiff must sustain [her] burden of proof in establishing jurisdictional facts through sworn

affidavits or other competent evidence," and may not "rely on the bare pleadings alone . . . ." Id.;

see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) ("Once

challenged, the plaintiff bears the burden of establishing personal jurisdiction." (citing General Elec.

Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001))).  "Any disputes created by the affidavits,

documents, or other records submitted for the court's consideration are resolved in favor of the non-

moving party. Ta Wa Chin v. Multivac, Inc., Civ. A. No. 07-3436, 2007 U.S. Dist. LEXIS 84835,

at *4 (E.D. Pa. Nov. 15, 2007) (citing Irons v. Transcor Amer., Civ. A. No. 01-4328, 2002 U.S. Dist.

LEXIS 14149, at *3 n.1 (E.D. Pa. July 8, 2002)).  The plaintiff must establish the defendant's

contacts with the forum state with reasonable particularity. Snyder v. Dolphin Encounters Ltd., 235

F. Supp. 2d 433, 436 (E.D. Pa. 2002) (citation omitted).

III.     DISCUSSION

Pursuant to Federal Rule of Civil Procedure 4(e), a federal court may exercise personal

jurisdiction over a nonresident of the state in which the court sits "to the extent permissible under the law of the state where the district court sits." Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted). Pennsylvania's long arm statute authorizes the exercise of jurisdiction over a nonresident "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); see also O'Connor, 496 F.3d at 316 (noting that the Pennsylvania long arm statute "provides for jurisdiction 'based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States.'" (quoting 42 Pa. Cons. Stat. Ann. § 5322(b) and citing Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992))). In evaluating whether an exercise of personal jurisdiction is constitutional, a court first determines whether the defendant's contacts with the forum state are sufficient to support general personal jurisdiction. Pennzoil, 149 F.3d at 200. General jurisdiction exists where a nonresident's contacts with the forum are "continuous and substantial," and permits the court to exercise jurisdiction "regardless of whether the subject matter of the cause of action has any connection to the forum." Id. (internal quotations omitted). In the absence of general jurisdiction, a court looks to whether the requirements of specific personal jurisdiction are met. Id. at 200-01. "Specific jurisdiction exists where the plaintiff's claim 'is related to or arises out of the defendant's contacts with the forum.'" Id. at 201 (quoting Farino, 960 F.2d at 1221). Plaintiff does not contend that specific jurisdiction exists in this case.

Defendant maintains that it does not have sufficient contacts with the Commonwealth of Pennsylvania to enable this Court to exercise general personal jurisdiction over it. General jurisdiction over a non-resident defendant is established where the defendant's contacts with the forum state are "'continuous and systematic.'" Pinker v. Roch Holdings, Ltd., 292 F.3d 361, 368 n.

1 (3d Cir. 2002) (quoting Int'l Shoe v. Washington, 326 U.S. 310, 317 (1945)). Plaintiff has a high

"'threshold to meet for the facts required to assert . . . general jurisdiction must be extensive and

persuasive.'" Kuehnemund v. Agrium, Inc., Civ. A. No. 07-83E, 2007 U.S. Dist. LEXIS 82984, at

*16 (W.D. Pa. Nov. 8, 2007) (quoting Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,

675 F.2d 587, 589 (3d Cir. 1982)). See also Zombeck v. Amada Co. Ltd., Civ. A. No. 06-953, 2007

U.S. Dist. LEXIS 84563, at *21 (W.D. Pa. Nov. 15, 2007) (same) (citing Allied Leather Corp. v.

Altama Delta Corp., 785 F. Supp. 494, 497 (M.D. Pa.1992)). Even "continuous activity of some

sorts [by a corporation] within a state is not enough to support [general jurisdiction over the

corporation]." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting Int'l

Shoe, 326 U.S. at 318). "Only when the 'continuous corporate operation within a state [is] thought

so substantial and of such a nature as to justify suit against it on causes of action arising from

dealings entirely distinct from those activities' may a court assert general jurisdiction over a

corporate defendant." Id. (quoting Int'l Shoe, 326 U.S. at 318).

Federal courts sitting in Pennsylvania consider the following objective criteria in ascertaining

the existence of general jurisdiction over a corporate defendant:  (1) whether the defendant is

"incorporated or licensed to do business in Pennsylvania;" (2) whether the defendant has "ever filed

any tax returns with the Commonwealth of Pennsylvania;" (3) whether the defendant files

"administrative reports with any agency or department of the Commonwealth;" (4) whether "the

defendant regularly purchase[s] products or supplies within Pennsylvania for use in its business

outside of the state;" (5) whether "the defendant own[s] land or property within the state;" (6)

whether "the defendant advertise[s] in Pennsylvania;" and (7) whether "the defendant maintain[s]

an agent in Pennsylvania." Gaylord v. Sheraton Ocean City Resort & Conference Ctr., Civ. A. No.

4

93-0463, 1993 U.S. Dist. LEXIS 5024, at *10 (E.D. Pa. Apr. 15, 1993) (citing <u>Wims v. Beach Terrace Motor Inn, Inc.</u>, 759 F. Supp. 264, 269 (E.D. Pa. 1991)).

Defendant has submitted the Affidavit of Phyllis LeTart, its Vice President of Legal and Business Affairs, in support of its Motion to Dismiss. (LeTart Aff. ¶1.) LeTart states that Defendant "is not licensed or registered to do business in Pennsylvania and does not regularly do business in Pennsylvania." (<u>Id.</u> ¶ 4.) Defendant is a West Virginia limited liability company which owns and operates a race track and video lottery facility located in Charles Town, West Virginia. (<u>Id.</u> ¶ 2.) Defendant does not maintain offices in Pennsylvania; have registered agents in Pennsylvania; own, maintain or control real estate in Pennsylvania; or sell products or materials in Pennsylvania. (<u>Id.</u> ¶¶ 5-7.) Ms. Le Tart admits that Defendant has engaged in advertising in Pennsylvania. Although Defendant does not presently advertise on any Pennsylvania television stations, in 2003 and 2005 it advertised on television stations in the Harrisburg-Lancaster-York area. (<u>Id.</u> ¶¶ 8, 12-14.) Defendant also advertised on a radio station in the Harrisburg-Lancaster-York area in 2003. (<u>Id.</u> ¶ 14.) Defendant ran print advertisements in the Harrisburg <u>Patriot News</u> three times in 2005. (<u>Id.</u> ¶ 12.) Defendant's only current advertising in Pennsylvania is through a billboard in Harrisburg and print advertisements in the <u>Valley Revue</u>, a magazine distributed in Virginia, West Virginia, Maryland and Pennsylvania. (<u>Id.</u> ¶ 10.) Defendant also sends direct mail solicitations to Pennsylvania residents who have accounts with it. (<u>Id.</u> ¶ 11.)[1]

Plaintiff maintains that Defendant has engaged in continuous and substantial contacts with Pennsylvania which subject it to the personal jurisdiction of this Court. Plaintiff contends that

---

[1]Defendant's Vice President of Marketing, Dee Mara, has testified that Defendant also engages in telemarketing in Pennsylvania. (Mara Dep. at 58-59.)

Defendant is subject to the personal jurisdiction of this Court because:  1) a substantial percentage of its annual slot machine customers are Pennsylvania residents; 2) it has relationships with Pennsylvania motor coach carriers who transport Pennsylvania residents to the Casino on a monthly basis; 3) it advertises in Pennsylvania; 4) it sends thousands of pieces of direct mail to Pennsylvania residents and contracts with a third party to conduct telemarketing campaigns whose targets include Pennsylvania residents; and 5) it has an interactive website which may be accessed by Pennsylvania residents.  Plaintiff also argues, in the alternative, that personal jurisdiction over Defendant may be predicated, under an alter-ego theory, on our personal jurisdiction over Defendant's parent corporation, Penn National Gaming, Inc., which is headquartered in Pennsylvania.

A.      General Jurisdiction Based on Defendant's Contacts with Pennsylvania

1.      Percentage of Customers who are Pennsylvania Residents

Plaintiff contends that Defendant should be subjected to personal jurisdiction in Pennsylvania because a significant percentage of its slot machine customers are from Pennsylvania.  Between 2003 and 2005, approximately 14 - 17% of Defendant's slot machine customers who participated in its "Players Choice" loyalty program were residents of Pennsylvania.[2]  (Pl. Ex. D.)  In addition, Defendant derived $11,881,330 in revenue from Pennsylvania residents in 2004.  (Pl. Ex. F at 16-17.)  However, the fact that a substantial percentage of the Casino's customers who belonged to Defendant's loyalty program were Pennsylvania residents does not establish that Defendant maintained substantial and continuous contacts with Pennsylvania.  Wims, 759 F. Supp. 264, 269-70

---

[2]Customers of Defendant may choose to become members of its Players Choice loyalty program. (Mara Dep. at 13.) Members of Players Choice are issued cards which they insert into the slot machines they use. (Id. at 19.) Players Choice members receive direct mail promotions from Defendant, the mailings received by a Players Choice member depend on that member's activity using the Players Choice Card. (Id. at 42.)

(finding that the fact that 25-27% of the Wildwood, New Jersey Inn's registered guests for the preceding year were Pennsylvania residents did not establish that the Inn's contacts with Pennsylvania were substantial and continuous) (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 438 (3d Cir. 1987)). Moreover, the fact that Pennsylvania residents spent large amounts of money in Defendant's West Virginia Casino is irrelevant to the issue of whether this Court has general personal jurisdiction over Defendant in Pennsylvania. Provident, 819 F.2d at 438 (noting that "the percentage of [the defendant's] total business represented by its Pennsylvania contacts is generally irrelevant" to the existence of general personal jurisdiction over the defendant).

2.    Motor Coach Carriers

Plaintiff contends that Defendant engages in continuous and substantial contacts with Pennsylvania because it maintains relationships with motorcoach carriers who transport patrons from Pennsylvania to the Casino. Defendant sends monthly promotional flyers to motor coach carriers that have registered with Defendant by providing Defendant with a copy of their liability insurance policy. (Mara Dep. at 25-27.) Five Pennsylvania motor coach carriers have registered with Defendant. (Id. at 27.) Once registered, the motor coach carriers call Defendant and let Defendant know when they will arrive in Charles Town, West Virginia. (Id. at 26.) When the motor coach carrier arrives, Defendant will have someone board the bus, give the patrons a brief description of what is available at Charles Town Races & Slots, and hand out vouchers. (Id. at 26-27.) Defendant will also post the motor coach carrier's schedule of trips to the Casino on its web site. (Id. at 30.) The motor coach carriers themselves determine the frequency of their trips to the Casino. (Id. at 32.) The motor coach carriers that carry Pennsylvania residents to Defendant's casino presently make a

7

total of seven trips per month to Charles Town, West Virginia. (Id. at 32-33.) The average number of customers in each of these buses varies, but never exceeds 35. (Id. at 33.)

We find that Defendant's connections with Pennsylvania motor coach carriers do not constitute continuous and substantial contacts with Pennsylvania. "The fact that the Defendant arranges transportation for Pennsylvania citizens to Defendant is an insufficient contact to support a finding of continuous and substantial contacts that give rise to general jurisdiction." Potts v. Harrah's Atlantic City Hotel & Casino, Civ. A. No. 06-5422, 2007 U.S. Dist. LEXIS 47197, at *11 (E.D. Pa. June 28, 2007) (determining that Defendant's arrangements with Pennsylvania bus companies to make daily trips from Pennsylvania to Defendant's casino and racetrack in New Jersey did not subject defendant to general personal jurisdiction in Pennsylvania (citing Feldman v. Bally's Park Place, Inc., Civ. A. No. 05-5345, 2006 U.S. Dist. LEXIS 37172, at *14 (E.D. Pa. June 5, 2006))). See also Feldman, 2006 U.S. Dist. LEXIS 37172, at *14 (E.D. Pa. June 5, 2006) ("The evidence on the record that Defendant Bally's also facilitated the transportation of Philadelphia citizens to its casinos by having one of its managers visit particular bus companies and pledge to have passengers greeted with vouchers once they arrived at Claridge Tower in New Jersey does not then make the exercise of personal jurisdiction reasonable.").

3.      Advertising, Direct Mail and Telemarketing in Pennsylvania

Plaintiff contends that Defendant is subject to general personal jurisdiction in Pennsylvania because it advertizes in Pennsylvania and makes tens of thousands of contacts with Pennsylvania annually through direct mail and telemarketing. Defendant engaged in limited television and radio advertising in Pennsylvania in 2003 and 2005. (LeTart Aff. ¶¶ 12-14; Mara Dep. at 48-52.) Defendant also ran advertising in the Harrisburg Patriot News three times in 2005 and, since 2003,

has advertised in a publication called the Valley Review, which is circulated in Virginia, West Virginia, Maryland, and Gettysburg, Pennsylvania. (LeTart Aff. ¶¶ 10, 12; Mara Dep. at 57.) Defendant has also advertised on a billboard in Pennsylvania since 2004. (Mara Dep. at 55-56.)

Defendant also engages in direct mailings of a newsletter, birthday cards, promotions and new member mailings to Players Choice members. (Mara Dep. at 36-37.) Defendant does not send direct mail to Pennsylvania residents who are not members of Players Choice. (Id. at 44-45.) Defendant spends approximately $600,000/year on direct mailings, including postage, for all Players Choice members. (Id. at 39-41; Pl. Ex. F at 19.) Approximately 10,300 residents of Pennsylvania were eligible to receive direct mailings from Defendant in 2005. (Mara Dep. at 43.) In addition, Defendant sends out recorded telephone messages through a third-party vendor to Players Choice members who opt to receive telephone calls from Defendant. (Id. at 59) There is no evidence on the record of this Motion as to how many of these calls are made to Players Choice members in Pennsylvania.

We find that Defendant's advertising in Pennsylvania, including its direct mail and telephone solicitation of Pennsylvania residents who are members of its Players Choice loyalty club, is insufficient to confer general personal jurisdiction over Defendant. "[C]ourts in this judicial district have consistently held that advertisements and solicitations, including direct mailings and voucher offers, are not, by themselves, substantial enough to meet the high standard for the exercise of general personal jurisdiction." Feldman, 2006 U.S. Dist. LEXIS 37172, at *11-12 (listing cases); see also Potts, 2007 U.S. Dist. LEXIS 47197, at *9-10 (rejecting Plaintiff's argument that Harrah's Atlantic City was subject to general personal jurisdiction in Pennsylvania because it advertised in Pennsylvania); Lean v. Atlantic City Showboat, Inc., Civ. A. No. 07-407, 2007 U.S. Dist. LEXIS

38765, at *13-14 (E.D. Pa. May 25, 2007) (finding that defendant's forum contacts were not sufficiently extensive and pervasive to subject it to general personal jurisdiction in Pennsylvania where its forum contacts consisted of advertising in the Philadelphia Inquirer and transportation contracts with bus companies to take patrons from Pennsylvania to defendant's New Jersey casino); Ferro v. Atlantic City Showboat, Inc., Civ. A. No. 07-1016, 2007 U.S. Dist. LEXIS 88954, at *9 (E.D. Pa. Dec. 3, 2007) ("Courts in this circuit have held that national advertisements that reach Pennsylvania residents or limited promotional mailings directed at Pennsylvanians are alone insufficient to establish general jurisdiction over an out-of-state corporation.").

        4.    <u>Defendant's Website</u>

Plaintiff further contends that Defendant is subject to the general personal jurisdiction of this court because it "has a web site which alone accounts for substantial business activities from Pennsylvania." (Pl.'s Supplemental Br. at 9-10.) Plaintiff has presented evidence that Defendant's web site invited "people to e-mail thoughts to Charles Town Gaming and there's an opportunity to win prizes for that . . . ." (Mara Dep. at 62.) That program ended in June 2007. (Id. at 63.) Pursuant to the program, "[a]nyone could go on to the website and provide any type of comment. And as long as . . . they provide[d] [an] e-mail address, at that point they would get entered into a drawing . . . ." (Id. at 63-64.) There were five winners selected from the drawing every month. (Id. at 64.) Defendant's website presently contains a customer service tool that allows viewers to send comments to the Defendant. (Id. at 65.)

We use a sliding scale to determine whether a defendant's web site subjects it to general jurisdiction in Pennsylvania:

        personal jurisdiction is proper if a website is "interactive" but not if

the website is "passive." For example, there would be personal jurisdiction if a defendant clearly does business over the internet by entering into contracts with residents of a foreign jurisdiction involving the knowing and repeated transmission of computer files over the internet. There would be no jurisdiction if a defendant maintains a passive website that only makes information available. If a website is interactive and allows users to exchange information with the host computer, the exercise of jurisdiction would be determined by the "level of interactivity and commercial nature of the exchange of information on the website." The court would consider not only interactivity, but also: (a) whether the websites are targeted specifically to Pennsylvanians; and (b) whether the websites are central to the defendants' business in Pennsylvania.

McCague v. Trilogy Corp., Civ. A. No. 06-887, 2007 U.S. Dist. LEXIS 18689, at *10-11 (E.D. Pa. Mar. 15, 2007) (quoting Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999)) (citations omitted). There is no evidence that Defendant does business over the internet by entering into contracts with residents of Pennsylvania involving the knowing and repeated transmission of computer files over the internet. There is evidence that the web site allows some interactivity, as it allows individuals to send comments to Defendant and, prior to June of this year, entered individuals who did so into a monthly prize drawing. (Mara Dep. at 62-63.) There is, however, no evidence that the website is targeted specifically to Pennsylvanians or that the website is central to the Defendant's business in Pennsylvania. Under these circumstances, we find that Defendant's website does not subject it to the exercise of general personal jurisdiction in Pennsylvania.

We have considered whether we may exercise general jurisdiction over Defendant as a result of Defendant's own contacts with Pennsylvania. In making our determination, we have examined evidence regarding: the percentage of Defendant's Casino customers who originate in Pennsylvania; the percentage of Defendant's revenues generated by those customers; Defendant's relationships

11

with motor coach carriers who transport Pennsylvania residents to the Casino; Defendant's advertising, direct mail and telemarketing solicitations in Pennsylvania; and Defendant's website. We find that Plaintiff has failed to establish, through extensive and persuasive evidence, that Defendant's contacts with Pennsylvania are both continuous and substantial and, accordingly, we find that the requirements of general personal jurisdiction are not met based upon Defendant's own contacts withe Pennsylvania.

B.      The Alter Ego Theory of General Jurisdiction

Plaintiff asks, in the alternative, that we exercise general jurisdiction over Defendant because its corporate parent, Penn National Gaming, Inc., has its corporate headquarters in Pennsylvania. "'[A] parent-subsidiary relationship is by itself an insufficient reason to pierce the corporate veil in the jurisdictional context.'" Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 420 (E.D. Pa. 2005) (quoting Dutoit v. Strategic Minerals Corp., 735 F. Supp. 169, 171 (E.D. Pa. 1990)). "The activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that the 'independence of the separate corporate entities was disregarded.'" Fisher v. Teva PFC SRL. 212 Fed. Appx. 72, 76 (3d Cir. 2006) (quoting Lucas v. Gulf & Western Indus., Inc., 666 F.2d 800, 806 (3d Cir. 1981)). "'A subsidiary will be considered the alter-ego of its parent only if the parent exercises control over the activities of the subsidiary.'" Simeone v. Bombardier-Rotax GMBH, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (quoting Directory Dividends, Inc. v. SBC Commc'ns, Inc., Civ. A. No. 01-CV-1974, 2003 U.S. Dist. LEXIS 12214, at *8 (E.D. Pa. July 2, 2003)). If such a showing is made, i.e., if Plaintiff is able to show that Penn National Gaming, Inc. "controls the day-to-day operations of [Defendant] such that [Defendant] can be said to be a mere department of the parent," we may exercise general personal jurisdiction over

Defendant based upon Penn National Gaming Inc.'s connections to Pennsylvania. Id. (citing Arch v. Am. Tobacco Co., 984 F. Supp. 830, 837 (E.D. Pa. 1997); Zwick v. Revco Drug Store, 580 F. Supp. 64, 66 (W.D. Pa. 1984); and Aamco Automatic Transmissions, Inc. v. Tayloe, 368 F. Supp. 1283, 1300 (E.D. Pa. 1973)).

In examining whether there is an alter ego relationship between Defendant and Penn National Gaming, Inc., we look at "the **legal interrelationship** of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception." In re Latex Gloves Prods. Liab. Litig., No. MDL 1148, 2001 U.S. Dist. LEXIS 12757, at *12 (E.D. Pa. Aug. 22, 2001). An alter ego relationship exists where the "'degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship.'" Id. (quoting Visual Sec. Concepts, Inc. v. KTV, Inc., 102 F. Supp. 2d 601, 605 (E.D. Pa. 2000)). Courts consider the following ten factors in determining whether there is an alter ego relationship:

> (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation.

Simeone, 360 F. Supp. 2d at 675 (citations omitted).

Plaintiff has submitted evidence that Defendant is a subsidiary of Penn National Gaming, Inc. (Pl. Ex. B at 3.) There is also evidence that Defendant's property manager reports to the Senior

13

Regional Vice President of Operations for Penn National Gaming, Inc. (Mara Dep. at 9.) Penn National Gaming, Inc. also reviews Defendant's advertising budget annually. (Id. at 67.) Plaintiff claims that Defendant was, until three years ago, a Pennsylvania limited liability company. There is, however, no evidence on the record of this Motion that Defendant has ever been a Pennsylvania limited liability company. Indeed, Defendant has submitted evidence that a limited liability company by the name of PNGI Charles Town Gaming, LLC was registered with the state of West Virginia on March 22, 1996 and, on August 23, 2004, Penn National Gaming of West Virginia, Inc., a West Virginia corporation, merged with and into PNGI Charles Town Gaming, LLC, a West Virginia limited liability company. (Def. Ex. B.)

The only evidence of the corporate relationship between Defendant and Penn National Gaming, Inc. is that Defendant is a subsidiary of Penn National Gaming, Inc., which exercises some unknown degree of oversight over Defendant's operations and budget. We decline to find, based upon these facts, that Penn National Gaming, Inc. "controls the day-to-day operations of [Defendant] such that [Defendant] can be said to be a mere department of the parent." Simeone, 360 F. Supp. 2d at 675 (citations omitted). We conclude that Plaintiff has not satisfied its burden of establishing, through sworn affidavits or other competent evidence, that the exercise of general personal jurisdiction over Defendant may be based upon Penn National Gaming's connections to Pennsylvania under the alter ego theory.

IV.   CONCLUSION

The evidence on the record of this Motion is insufficient to establish that Defendant's contacts with Pennsylvania are so continuous and substantial as to support the exercise of general personal jurisdiction over Defendant in this district. The evidence on the record of this Motion is

14

also insufficient to establish general personal jurisdiction over Defendant based upon Penn National Gaming, Inc.'s contacts with Pennsylvania under an alter ego theory. Although we lack personal jurisdiction over Defendant, we conclude that transferring this action to the Northern District of West Virginia better serves the interests of justice than dismissing it. See 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . . ."). Defendant has asked, in the alternative, that we transfer this case to the Northern District of West Virginia pursuant to 28 U.S.C. § 1406, which allows a district court to transfer a case that has been filed in the wrong venue to any district in which it could have been properly filed. 28 U.S.C. § 1406(a). Personal jurisdiction and venue are proper in the Northern District of West Virginia with respect to Defendant and this action could have been brought there. See 28 U.S.C. § 1391(a), (c). We conclude, therefore, that a transfer is in the interest of justice because it will prevent the duplication of filing costs as well as the statute of limitations problems that would likely arise from a dismissal at this point. See Feldman, 2006 U.S. Dist. LEXIS 37172, at *23-24 (citing Lawman Armor Corp. v. Simon, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004)). This action is, accordingly, transferred to the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1406(a) and 1631.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALICE B. DAVIS                  :               CIVIL ACTION

               :

     v.                   :

               :

PNGI CHARLES TOWN GAMING, LLC  :          No. 07-2352

## O R D E R

**AND NOW**, this 26th day of December, 2007, upon consideration of Defendant's Motion

to Dismiss" (Docket No. 4), and all documents filed in connection therewith, **IT IS HEREBY**

**ORDERED** as follows:

1.     Defendant's Motion is **DENIED** to the extent it seeks dismissal for lack of personal

jurisdiction and improper venue;

2.     Defendant's Motion is **GRANTED** to the extent it seeks a transfer of this matter to

the United States District Court for the Northern District of West Virginia, a district

court with personal jurisdiction over the Defendant and in which venue may be

properly laid;

3.     This action is **TRANSFERRED** to the United States District Court for the Northern

District of West Virginia.

BY THE COURT:

_____

John R. Padova, J.